## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| ANGLEFIX, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) No. 2:13-cv-02407-JPM-tmp |
| WRIGHT MEDICAL TECHNOLOGY, INC., | ) |
| | ) |
| Defendant. | ) |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Wright Medical Technology Inc.'s ("Defendant") Motion for Summary Judgment for Lack of Standing (ECF No. 130), filed April 25, 2016. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### I. PROCEDURAL BACKGROUND

The relevant procedural history prior to the instant motion is provided in the Court's claim construction order, entered on December 30, 2015. (ECF No. 93 at 2-5.)

On April 25, 2016, Defendant Wright Medical Technology, Inc. filed the instant motion for summary judgment for lack of standing. (ECF No. 130.) Plaintiff AngleFix, LLC ("AngleFix" or "Plaintiff") responded in opposition on May 11, 2016. (ECF No. 146.) Defendant filed a reply brief on May 31, 2016. (ECF

No. 153.)  The Court held a motion hearing on June 21, 2016.
(Min. Entry, ECF No. 164.)

Plaintiff filed a motion for summary judgment of infringement on May 23, 2016.  (ECF No. 150.)  On May 31, 2016, Defendant filed a motion to strike the expert reports of Matthew Davies and preclude Davies from offering expert testimony.  (ECF No. 154.)  On the same day, Defendant filed a motion for summary judgment of invalidity and a motion for summary judgment of non-infringement.  (ECF Nos. 155, 157.)  These motions are not yet ripe.

## II. UNDISPUTED MATERIAL FACTS

The following material facts are undisputed for the purposes of the instant motion.[1]

### A. The '677 Patent

The patent-in-suit is U.S. Patent No. 6,955,677 ("the '677 Patent"), which issued on October 18, 2005, and is entitled "Multi-angular fastening apparatus and method for surgical bone

---

[1] Defendant filed its statement of undisputed material facts ("SUF") on April 25, 2016.  (ECF No. 131.)  Plaintiff did not respond, and the time in which to do so has expired.  See LR 56.1(b); see also LR 56.1(d) ("Failure to respond to a moving party's statement of material facts . . . within [28 days after the motion is served] shall indicate that the asserted facts are not disputed for purposes of summary judgment.").
    Defendant asserts in its reply brief that Plaintiff's failure to submit a statement of additional facts while asserting additional facts in exhibits attached to its response should, under the Local Rules preclude the Court from considering additional facts stated in Plaintiff's response.  (ECF No. 153 at 3.)  The Court, for the sake of a complete record and understanding of the pertinent facts, will consider any additional facts presented in Plaintiff's response, but instructs both parties to ensure that future filings are in compliance with the Local Rules.

screw/plate systems." ('677 Patent at PageID 3743, ECF No. 130-3; Statement of Undisputed Facts ("SUF") ¶ 1, ECF No. 131.) On December 11, 2002, the University of North Carolina at Chapel Hill ("UNC") purportedly obtained by assignment all rights, title, and interests in the '677 Patent from the named inventor, Laurence E. Dahners. (See ECF No. 130-4; SUF ¶ 2; see also '677 Patent at PageID 3743.)

**B.    The Licensing Agreement**

On March 9, 2006, UNC and Plaintiff entered into a License Agreement (the "Original License"). (ECF No. 130-6; SUF ¶ 5.) Plaintiff and UNC amended the Original License by Amendment #1 on March 8, 2007. (ECF No. 130-7; SUF ¶ 5.) Sometime in late 2008,[2] UNC and Plaintiff entered into an Amended and Restated License Agreement (the "Amended License"), which superseded the Original License. (Amended License at 1, ECF No. 130-8; SUF ¶ 6.)  On March 24, 2010, UNC and Plaintiff amended the Amended License, by an Amendment to Exclusive License Agreement. (ECF No. 130-9 (naming an entity as a sublicensee of Plaintiff); SUF ¶ 7.)

The Amended License permits Plaintiff "to make, have made, use, offer for sale, sell, and import LICENSED PRODUCTS in the

---

[2] While the first paragraph of the Amended License did not include an "effective date" in November 2008 (see ECF No. 130-8 at 1), the Amended License was signed by UNC's Director of the Office of Technology Development, Catherine Innes, on November 24, 2008, and by Plaintiff's president, Michael Shinsheimer, on December 12, 2008 (see id. at 18).

3

LICENSED FIELD." (Amended License ¶ 2.2; SUF ¶ 23.) The term "LICENSED FIELD" refers only to "the practice and commercialization of any of the INVENTIONS for orthopedic and craniomaxillofacial purposes." (Amended License ¶ 1.3; SUF ¶ 24.) The term "INVENTIONS" describes the multi-angular system, the screw locking system, and the lag tool system, individually or collectively. (Amended License ¶ 1.10; id. at PageID 3804; SUF ¶ 25.) UNC reserves the right to make use of the licensed products for non-commercial purposes. (Amended License ¶ 2.3; SUF ¶ 26.) Plaintiff may sublicense any or all of its rights in the '677 Patent, except the right to sublicense further those rights, unless UNC provides written consent. (Amended License ¶ 5.1; SUF ¶¶ 27-28.)

Under the Amended License, Plaintiff has the primary right to institute an infringement action against a third-party infringer. (Amended License ¶ 8.2; SUF ¶ 34.) Any voluntary disposition of an infringement action, including settlement or consent judgment, requires UNC's approval, which shall not be unreasonably withheld. (Amended License ¶ 8.2; SUF ¶ 34.) UNC has rights to owed royalties on lost profits damages recovered from a third-party infringer and to 20% of any reasonable royalty awarded. (Amended License ¶ 8.2; SUF ¶ 34.) If Plaintiff chooses not to pursue litigation against a third-party infringer, it must notify UNC within sixty days of receiving

notice of the infringement, and UNC may then defend or enforce the patent itself. (Amended License ¶ 8.3; SUF ¶ 34.) Plaintiff may not assign the Amended License to any other person or entity without UNC's consent, which shall not be unreasonably withheld. (Amended License ¶ 11.2; SUF ¶ 33.)

The Amended License states that Plaintiff "shall use commercially reasonable efforts" to bring licensed products to market and to meet certain deadlines, including a March 1, 2009, deadline to begin animal testing and a March 1, 2010, deadline to begin human testing of a licensed product. (See Amended License ¶ 3.12; SUF ¶ 9.) As of January 27, 2016, the date Defendant deposed Plaintiff's president, Michael Shinsheimer, Plaintiff had not conducted animal or human testing of a licensed product. (Shinsheimer Dep. 53:13-54:5, ECF No. 130-10; SUF ¶ 10.) Neither Plaintiff nor any sublicensee of Plaintiff has brought to market any products practicing the patent rights under the Amended License (see Amended License ¶ 1.7), including those of the '677 Patent. (Shinsheimer Dep. 106:25-107:6, 239:14-240:5; SUF ¶ 11.)

The Amended License states that, until Plaintiff sells a licensed product, Plaintiff shall submit a biannual report to UNC that describes Plaintiff's efforts to commercialize the licensed product. (Amended License ¶ 4.1; SUF ¶ 13.) Plaintiff did not submit reports as required by the Amended License.

(Shinsheimer Dep. 110:4-12, 143:12-22; SUF ¶ 14; see also ECF No. 130-11.)

The Amended License also states that Plaintiff shall make minimum royalty payments if the amount payable to UNC, based on sales and royalty income, does not meet the minimum royalty amount. (Amendment to Exclusive License Agreement ¶ 2, ECF No. 130-9; SUF ¶ 15.) Plaintiff has not made any minimum royalty payments to UNC. (Shinsheimer Dep. 138:21-140:18; Quay Dep. 93:25-94:6, ECF No. 130-5; SUF ¶ 16.)

A material breach of the Amended License includes, but is not limited to: "the failure to deliver . . . any accrued royalty or other accrued payment at the time or times the same should be due . . . , [and] failure to provide reports as specified in Section 4.1." (Amended License ¶ 6.2; SUF ¶ 22.) If Plaintiff fails to cure any material breach of the Amended License within sixty days of receipt of written notice by UNC, the Amended License shall automatically terminate. (Amended License ¶ 6.2; SUF ¶ 2.2.)

**III. LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam).

"A genuine dispute of material facts exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., 757 F.3d 540, 543-44 (6th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d

911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)).

> To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)), cert. denied, 133 S. Ct. 866 (2013).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); see also Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (acknowledging that a district court has no duty to search entire record to establish grounds for summary judgment).

**IV. ANALYSIS**

In the instant motion, Defendant asserts that Plaintiff has neither constitutional nor prudential standing to bring the instant suit. (ECF No. 130-1 at 14-24.) Defendant asserts that Plaintiff, having breached the Amended License, holds only a "bare license" and thus lacks constitutional standing to sue. (Id. at 14-17.) Defendant further asserts that Plaintiff does not have "all substantial rights" in the '677 Patent such that it would be able to establish prudential standing. (Id. at

17-24.) Plaintiff argues that it has not materially breached the Amended License (ECF No. 146 at 2-6), and that it has both constitutional and prudential standing (id. at 10-23). The Court finds that Defendant is not entitled to summary judgment for lack of constitutional standing because there are genuine issues of material fact as to whether Plaintiff has materially breached the Amended License. The Court also finds that Defendant is entitled to summary judgment for lack of prudential standing because there is no genuine issue of material fact that Plaintiff does not have all substantial rights in the '677 Patent and cannot bring this suit without joining UNC.

**A. Constitutional Standing**

A party has constitutional standing if it can show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). A plaintiff bears the burden of establishing the elements of constitutional standing. Id. "In an action for patent infringement, '[t]he party [that] hold[s] the exclusionary rights to the patent suffers legal injury in fact under the statute.'" MHL TEK, LLC v. Nissan Motor Co., 655 F.3d 1266, 1274 (Fed. Cir. 2011) (first alteration in original) (quoting

Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007)); see also WiAV Sols. LLC v. Motorola, Inc., 631 F.3d 1257, 1264-65 (Fed. Cir. 2010) ("a party holding one or more . . . exclusionary rights . . . suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue").

Defendant asserts that Plaintiff lacks constitutional standing because Plaintiff cannot have suffered an injury in fact when it materially breached the Amended License by failing to meet certain deadlines and requirements. (ECF No. 130-1 at 14-17.) Plaintiff argues that, because neither it nor UNC has stated that there was a material breach of the Amended License, it still holds at least one exclusionary right in the '677 Patent, and therefore has constitutional standing. The Court finds that a genuine dispute of material fact exists as to whether a material breach of the Amended License exists; thus, Defendant is not entitled to summary judgment for lack of constitutional standing.

### 1. Exclusionary Rights

Exclusionary rights under the Patent Act include the right to prevent others from practicing the invention. WiAV, 631 F.3d at 1264-65. A plaintiff need not have all exclusionary rights to establish constitutional standing. Id. at 1265 ("the touchstone of constitutional standing in a patent infringement

suit is whether a party can establish that it has <u>an exclusionary right</u> in a patent." (emphasis added)).

According to the Amended License, Plaintiff holds at least one exclusionary right in the '677 Patent. (See Amended License ¶ 2.2, ECF No. 130-8 (granting Plaintiff an exclusive license "to make, have made, use, offer for sale, sell and import LICENSED PRODUCTS in the LICENSED FIELD").) The limitation on Plaintiff's exclusive license to the licensed field is not fatal to Plaintiff's constitutional standing argument. See <u>WiAV</u>, 631 F.3d at 1266 ("there [is no] indication that the [Federal Circuit] created a bright-line rule [in <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481 (Fed. Cir. 1998)] that a party cannot be an exclusive licensee of a patent if others have the right to license the patent"); <u>Textile Prods.</u>, 134 F.3d at 1484 ("To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license <u>in the area of exclusivity</u>." (emphasis added)). Thus, having found that the Amended License conferred at least one exclusionary right on Plaintiff that would be sufficient to establish constitutional standing, the Court next considers whether Plaintiff materially breached the Amended License such that it can no longer enforce its patent rights.

## 2. Breach of Contract

The parties do not dispute that Plaintiff has not complied with the terms of the Amended License. (See SUF ¶¶ 9-11, 13-16.) Both Plaintiff and UNC assert, however, that Plaintiff has not materially breached the Amended License. (See ECF No. 146 at 2-6.) Jacqueline Quay, the Director of Licensing and Innovation Support at UNC, stated in her affidavit that Plaintiff "is not in material breach of any Agreement with UNC" and that "all previous potential and actual breaches, if any" have been resolved. (Quay Aff. ¶¶ 1, 3-4, ECF No. 146-3.) The Amended License also includes a provision that indicates UNC and Plaintiff may waive breaches. (See Amended License ¶ 11.3.)

Defendant argues that Quay's statements "do not demonstrate a triable issue of fact as to" a material breach of the Amended License and serve only to support Defendant's position that UNC has merely forbore the termination of the Amended License. (ECF No. 153 at 4.) While Defendant asserts that Plaintiff is "in constant and continuing jeopardy of termination" of the Amended License (ECF No. 130-1 at 16), Quay stated that "UNC does not intend to terminate any agreement between AngleFix and UNC related to the '677 Patent any time before expiration of the patent." (Quay Aff. ¶ 5.) Since UNC has not asserted a material breach (id. ¶¶ 3-4), there is also no risk of automatic termination of the Amended License. (See Amended License ¶ 6.2

12

("if LICENSEE should materially breach this LICENSE AGREEMENT and fail to cure any such breach within sixty (60) days of receipt of <u>written notice from UNIVERSITY describing such breach</u>, then this LICENSE AGREEMENT shall automatically terminate" (emphasis added)).)

Although the Amended License defines "material breach" to include certain of Plaintiff's failures, such as the failure to provide biannual reports (see Amended License ¶ 6.2; SUF ¶¶ 13-14), there is a genuine dispute of material fact as to whether an actual material breach of the Amended License exists, as neither party to the contract has asserted one. Defendant's reliance, therefore, on the reasoning in <u>Cordis Corp. v. Medtronic, Inc.</u>, 780 F.2d 991 (Fed. Cir. 1985), is tenuous. As a policy, the Federal Circuit found, "[i]t would not be fair for the plaintiffs to be allowed simultaneously to reap all the benefits of the licensing agreement and to deprive the licensor of all his royalties." <u>Cordis</u>, 780 F.2d at 995 (quoting <u>Warner-Jenkinson Co. v. Allied Chem. Corp.</u>, 567 F.2d 184, 188 (2d Cir. 1977)).

In <u>Cordis</u>, the plaintiff-licensee itself asserted that its licensing agreement with the defendant-patentee was void because the licensed patents were invalid, yet also sought an injunction to protect itself from litigation under the license agreement. <u>Id.</u> at 993. The Federal Circuit vacated the district court's

granting of the injunction, finding that the plaintiff could withhold royalty payments but could not then avoid the consequences of doing so, such as being sued for infringement. Id. at 995, 997.

In the instant case, both Plaintiff and UNC assert that there is no breach of the Amended License and there do not appear to be undesirable consequences arising from Plaintiff's failure to make royalty payments.[3]

Thus, Defendant has not met its burden to establish the absence of any genuine issue of material fact; the parties dispute whether Plaintiff has materially breached the contract. Accordingly, Defendant's motion for summary judgment is DENIED as to Plaintiff's lack of constitutional standing.

**B. Prudential Standing**

Constitutional standing alone is insufficient to bring a claim for patent infringement; a plaintiff must also have prudential standing as a patentee pursuant to 35 U.S.C. § 281. Alps South, LLC v. Ohio Willow Wood Co., 787 F.3d 1379, 1382 (Fed. Cir. 2015). The general rule governing prudential standing in a patent case is that the patentee should be joined

---

[3] It is unclear whether UNC has even been deprived of "all its royalties." Quay stated in her deposition that she believed that the settlement of a previous litigation brought by Plaintiff consisted of royalties, that Plaintiff had paid royalties, and that "[UNC] do[es]n't always have licensees paying ongoing royalties." (Quay Dep. 163:16-19, ECF No. 146-2.)

14

in any infringement suit brought by an exclusive licensee. Prima Tek II L.L.C., v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000). "The Supreme Court has long recognized that an exclusive licensee cannot sue for infringement without joining the patent owner if the license grants merely 'an undivided part or share of th[e] exclusive right [granted under the patent].'" Alps South, 787 F.3d at 1383-84 (alterations in original) (quoting Waterman v. Mackenzie, 138 U.S. 252, 255 (1891)) (citing Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co., 144 U.S. 248, 252 (1892)).

When an exclusive licensee has "all substantial rights" under the patent, however, it can be considered an assignee, and thus the effective patentee under 35 U.S.C. § 281, and bring the infringement suit itself. Int'l Gamco, Inc. v. Multimedia Games, Inc., 504 F.3d 1273, 1276 (Fed. Cir. 2007) (citing Prima Tek, 222 F.3d at 1377). Rights a district court should "examine[] to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of patent" include:

> transfer of the exclusive right to make, use, and sell products or services under the patent . . . . , the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of

> the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent.

Alfred E. Mann Found. for Sci. Research v. Cochlear Corp., 604 F.3d 1354, 1360-61 (Fed. Cir. 2010) (citation omitted).

Defendant asserts that Plaintiff does not have "all substantial rights" in the '677 Patent because UNC's retention of certain rights significantly restricts Plaintiff's rights. (ECF No. 130-1 at 17-22.) Plaintiff argues that, despite UNC's retention of limited rights, Plaintiff "has been granted sufficient substantial rights from [UNC] which allow AngleFix to proceed as the sole plaintiff in this case." (ECF No. 146 at 2, 17-23.) The Court finds that there is no genuine dispute of material fact that Plaintiff does not have all substantial rights in the '677 Patent and thus, that Plaintiff does not have prudential standing. Specifically, the Court finds that, to establish prudential standing, Plaintiff must join UNC in the suit because UNC transferred to Plaintiff only the exclusive right to make, use, and sell products within the licensed field.

### 1. "Field of Use" Limitation

As stated in the Amended License, Plaintiff is an exclusive licensee "to make, have made, use, offer for sale, sell and import LICENSED PRODUCTS in the LICENSED FIELD." (Amended License ¶ 2.2.) It is undisputed that the "LICENSED FIELD" is

limited to "the practice and commercialization of any of the INVENTIONS for orthopedic and craniomaxillofacial purposes." (Amended License ¶ 1.3; SUF ¶ 24.) Thus, like the patentee in Alps South, UNC "retained the exclusive right to make, use, and sell products covered by the ['677 Patent] in all areas outside" the licensed field of orthopedic and craniomaxillofacial products. 787 F.3d at 1383. The Federal Circuit in Alps South reiterated that "our standing jurisprudence 'compels an exclusive licensee with less than all substantial rights, such as a field of use licensee, to join the patentee before initiating suit.'" Id. at 1384 (quoting Int'l Gamco, 504 F.3d at 1278).

Plaintiff argues that it is only required to establish that it has the right to exclude Defendant, and not all persons or entities, from practicing the '677 Patent. (ECF No. 146 at 12 (citing WiAV, 631 F.3d at 1267).) But see In'tl Gamco, 504 F.3d at 1279 ("The Supreme Court emphasized that an assignment that confers standing also excludes 'all other persons, even the patentee.'" (quoting Waterman, 138 U.S. at 256)). In WiAV, since the plaintiff had established prudential standing by joining the patentee to the suit, see 631 F.3d at 1265 n.1, whether the plaintiff needed to establish its right to exclude all others from practicing the patent was a question to resolve constitutional standing only. See id. at 1267. While this

17

Court follows the WiAV standard in its consideration of constitutional standing, see supra Part IV.A.1, the standard does not apply to analysis of prudential standing, particularly in light of Alps South.

The prudential standing requirement to join a patentee when an exclusive licensee with less than all substantial rights brings suit alleviates the risk of multiple suits or liabilities. See Int'l Gamco, 504 F.3d at 1278. Plaintiff further argues that there is no risk of multiple suits and multiple liabilities because UNC "is contractually and legally bound by the decision in this case." (ECF No. 146 at 12-13.) As Defendant notes in its reply, Plaintiff corroborates its position that there is no such risk only by Quay's affidavit (see Quay Aff. ¶ 5), and no provision of the Amended License appears to support the position. (ECF No. 153 at 5-6.)

Accordingly, the Court finds that the facts are insufficient to establish a genuine dispute as to Plaintiff's purported prudential standing.[4] Defendant's motion for summary

---

[4] Both parties also present arguments about other substantial rights such as the right to bring infringement suits and the right to control assignments and sublicensing. (See ECF No. 130-1 at 19-22; ECF No. 146 at 17-23.) The Court need not consider whether UNC transferred these other rights to Plaintiff because it has determined that the exclusive right to exclude was not transferred completely, see supra pp. 16-18, and Plaintiff's prudential standing depends on the transfer of all substantial rights, including the right to exclude. See Prima Tek, 222 F.3d at 1379 ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether (cont.)

judgment is GRANTED as to Plaintiff's lack of prudential standing.

### 2. Joinder of UNC to Cure Defect in Standing

While a defect in constitutional standing cannot be cured once a suit has begun, Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1310 (Fed. Cir. 2003), joinder of UNC to this suit can cure the defect in prudential standing. See Fieldturf, Inc. v. Sw. Recreational Indus., Inc., 357 F.3d 1266, 1269 (Fed. Cir. 2004) ("An exclusive licensee can cure a defect in [prudential] standing by joining the patentee . . . ."). "The appropriate way of bringing a joinder question . . . is by motion." Mentor H/S, Inc. v. Medical Device All., Inc., 240 F.3d 1016, 1019 (Fed. Cir. 2001). Therefore, to establish prudential standing, Plaintiff shall file a motion to add UNC as a co-plaintiff within thirty (30) days of the entry of this order. Defendant may respond within fourteen (14) days from the filing of Plaintiff's motion. Because Plaintiff currently does not have prudential standing, the Court hereby stays proceedings in the instant case pending UNC's joinder as co-plaintiff.

## V. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment for lack of constitutional standing is DENIED.

---

the agreement conveys in full the right to exclude others from making, using and selling the patented invention in the exclusive territory.").

Defendant's motion for summary judgment for lack of prudential standing is GRANTED. Plaintiff must move to join UNC within thirty (30) days of this order, up to and including July 27, 2016. If Plaintiff fails to do so, the Court will dismiss the instant case without prejudice.[5] The case is hereby STAYED until UNC is joined as a co-plaintiff.

**IT IS SO ORDERED,** this 27th day of June, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[5] Under the law of the regional circuit, "the decision whether to dismiss with or without prejudice is committed to the sound discretion of the district court." H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed. Cir. 2002) (citing Grover by Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994)). "Ordinarily, dismissal for lack of standing is without prejudice" unless it is "plainly unlikely" that the defect in standing can be cured. Fieldturf, 357 F.3d at 1269 (citing H.R. Techs., 275 F.3d at 1385).