IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ANGLEFIX TECH, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-2407-JPM-tmp |
| v. | ) | |
| WRIGHT MEDICAL TECHNOLOGY, | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO INTERVENE, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING,
AND LIFTING STAY**

Before the Court is the Joint Motion of Plaintiff Anglefix
and Third Party Intervener The University of North Carolina to
Add The University of North Carolina as Co-Plaintiff in this
Matter, filed September 15, 2016. (ECF No. 176.) Defendant
Wright Medical Technology ("Wright") opposes the motion,
asserting The University of North Carolina ("UNC")'s Waiver of
Claims (ECF No. 171-1) conveyed a license to the patent-in-
suit. (ECF No. 178.) Also before the Court is Defendant's
Motion for Summary Judgment for Lack of Standing. (ECF No.
130.)

For the reasons stated below, the Court GRANTS Plaintiff
AngleFix Tech, LLC ("Anglefix") and UNC's motion to join UNC as
a co-plaintiff, DENIES Defendant's Motion for Summary Judgment

1

for Lack of Standing, and lifts the June 27, 2016 stay in the case (ECF No. 169).

## I. BACKGROUND

On April 25, 2016, Defendant filed a Motion for Summary Judgment for Lack of Standing. (ECF No. 130.) AngleFix responded in opposition on May 11, 2016. (ECF No. 146.) Defendant filed a reply brief on May 31, 2016. (ECF No. 153.) The Court held a motion hearing on June 21, 2016. (Min. Entry, ECF No. 164.)

On June 27, 2016, the Court granted in-part and denied in-part Defendant's Motion for Summary Judgment for Lack of Standing, determining Anglefix had statutory standing but lacked prudential standing. (ECF No. 169.) To cure prudential standing, the Court ordered AngleFix to join UNC as a co-plaintiff by July 27, 2016, and stayed the case until such joinder was made. (Id. at 20.)

On July 25, 2016, AngleFix filed a motion, not to join UNC as a co-plaintiff, but to use a Waiver of Claims (hereinafter "the Waiver" or "UNC's Waiver") from UNC as a substitute for joinder. (ECF No. 171.) Defendant responded in opposition on July 27, 2016. (ECF No. 172.)

On August 2, 2016, the Court denied AngleFix's motion to accept UNC's Waiver in place of the joinder of UNC as a party in the instant litigation. (ECF No. 175.) The Court ordered AngleFix to join UNC by September 16, 2016, or the Court would dismiss the action with prejudice. (Id. at 4.) On September 15, 2016, AngleFix filed the instant motion to join UNC as a co-plaintiff. (ECF No. 176.) Attached to that motion was UNC's Submission of Authorization to Join as Co-Plaintiff and Appointment of Counsel, wherein UNC also "rescind[ed] it [sic] previous Waiver of Claims Against Wright Medical." (ECF No. 176-1.) Defendant opposed the motion on October 5, 2016, asserting that UNC could not rescind its Waiver, asserting it provided a license to Defendant under the contested patent, U.S. Patent No. 6,955,677 ("the '677 Patent"). (ECF No. 180.) Anglefix filed a reply on October 14, 2016 (ECF No. 183), and Defendant filed a sur-reply on October 18, 2016 (ECF No. 186). On November 3, 2016, the Court held a telephonic motion hearing. (Min. Entry, ECF No. 189.)

## III. LEGAL STANDARD

The law has numerous nuanced terms by which a party may relinquish its rights, including by release, waiver, or

covenant.[1]  A party may even relinquish its rights by multiple

means.[2]  Regardless of the means, however, courts assess the

relinquished rights pursuant to the general principles of

contract law.[3]  Unless the contract contains a choice-of-law

provision, a contract is generally subject to the law of the

state in which it was formed.[4]  This is equally true in the

patent context.  <u>See, e.g.</u>, <u>Already v. Nike</u>, 133 S. Ct. 721

---

[1] RELEASE, Black's Law Dictionary (10th ed. 2014)("The relinquishment or concession of a right, title, or claim."); WAIVER, <u>id.</u>("The voluntary relinquishment or abandonment — express or implied — of a legal right or advantage."); COVENANT NOT TO SUE, <u>id.</u> (An agreement "in which a party having a right of action agrees not to assert that right in litigation.").

[2] If the party having a right of action promises "never to sue [in a covenant not to sue, it] operates as a discharge just as does a release." COVENANT, Black's Law Dictionary (10th ed. 2014)(citing John D. Calamari & Joseph M. Perillo, The Law of Contracts § 21-11, 878-79 (3d ed. 1987)). Thus, a release, depending on how it is drafted, can be the functional equivalent of a covenant not to sue and vis versa. Raymond T. Nimmer and Jeff C. Dodd, Modern Licensing Law § 1:17.

[3] <u>See, e.g.</u>, <u>Weingart v. Allen & O'Hara</u>, 654 F.2d 1096, 1103 (5th Cir. 1981)(interpreting release pursuant to contract law); <u>Coral Gables Imported Motorcars, Inc. v. Fiat Motors of No. America, Inc.</u>, 673 F.2d 1234, 1238 (11th Cir. 1982)(same); <u>Acstar Ins. Co. v. Harden</u>, 16 F. App'x 213, 216 (4th Cir. 2001)(same); <u>Mason v. USEC, Inc.</u>, No. 3:07-CV-10, 2008 WL 4057799, at *7 (E.D. Tenn. Aug. 26, 2008) (citing <u>Richland Country Club, Inc. v. CRC Equities, Inc.</u>, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991)) (same); <u>Maxum Foundations, Inc. v. Salus Corp.</u>, 779 F.2d 974, 981 (4th Cir. 1985)(interpreting waiver pursuant to contract law); <u>Kunkel v. C.I.R.</u>, 821 F.3d 908, 910 (7th Cir. 2016), <u>reh'g denied</u> (June 30, 2016)(same); <u>Vintage Health Res., Inc. v. Guiangan</u>, 309 S.W.3d 448, 458 (Tenn. Ct. App. 2009) (same).

[4] <u>See, e.g.</u>, <u>Se. Texas Inns, Inc. v. Prime Hosp. Corp.</u>, 462 F.3d 666, 672 n.8 (6th Cir. 2006); <u>Ohio Cas. Ins. Co. v. Travelers Indem. Co.</u>, 493 S.W.2d 465, 467 (Tenn. 1973)(following the rule of lex loci contractus); <u>Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc.</u>, 386 F.3d 581 (4th Cir. 2004); <u>Bailey v. Netherlands Ins. Co.</u>, 615 F. Supp. 2d 1332 (M.D. Fla. 2009); <u>Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group</u>, 343 F. Supp. 2d 989 (D. Kan. 2004); <u>Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.</u>, 2009 WL 280457 (Ala. 2009); <u>Convergys Corp. v. Keener</u>, 276 Ga. 808, 582 S.E.2d 84 (2003); <u>In re K.M.H.</u>, 285 Kan. 53, 169 P.3d 1025 (2007), <u>cert. denied</u>, 129 S. Ct. 36, 172 L. Ed. 2d 239 (2008); <u>Harvell v. Goodyear Tire and Rubber Co.</u>, 2006 OK 24, 164 P.3d 1028 (Okla. 2006).

(2013); <u>Wi-LAN USA, Inc. v. Ericsson, Inc.</u>, 574 F. App'x 931, 937 (Fed. Cir. 2014)(interpreting New York contract law to a non-assert provision in patent case); <u>Transcore, LP v. Elec. Transaction Consultants Corp.</u>, No. CIV.A.3:05-CV-2316-K, 2008 WL 2152027, at *4 (N.D. Tex. May 22, 2008), <u>aff'd</u>, 563 F.3d 1271 (Fed. Cir. 2009) ("examin[ing] the language of the Covenant Not to Sue to determine whether, under applicable contract interpretation principles, it is a conditional license that precludes patent exhaustion.").

In the instant case, UNC's Waiver, formed in Tennessee and lacking a choice-of-law provision, is subject to Tennessee contract law.

Under contract law in Tennessee, an enforceable contract must have an offer, acceptance, and consideration. Generally, an offer is "[t]he act . . . of presenting something for acceptance." OFFER, Black's Law Dictionary (10th ed. 2014). Offers commonly express how the offeror intends to be bound, and may require a particular type of acceptance. An offer may also be conditional, such that the contract will not take effect until some contingent prerequisite has been satisfied. <u>Safeco Ins. Co. of America v. City of White House, Tenn.</u>, 36 F.3d 540, 30 Fed. R. Serv. 3d 598, 1994 FED App. 0345P (6th Cir. 1994) (citing <u>Buchanan v. Johnson</u>, 595 S.W.2d 827 (Tenn.

Ct. App. 1979); see also Demoville & Co. v. Davidson Cty., 87 Tenn. 214, 10 S.W. 353, 355 (1889) (finding "the release is conditional upon the existence of certain facts, or upon acceptance of certain terms. . ."). Therefore, irrespective of clear acceptance, the contract is not enforceable until certain facts exist. Real Estate Mgmt., Inc. v. Giles, 41 Tenn. App. 347, 353, 293 S.W.2d 596, 599 (1956)("A conditional contract is a contract whose very existence and performance depends upon the happening of some contingency or condition expressly stated therein. . ."). To ascertain an offer's terms, whether conditional or otherwise, Tennessee law mandates that courts construe an offer by its clear and unambiguous meaning. Sutton v. First Nat. Bank of Crossville, 620 S.W.2d 526 (Tenn. Ct. App. 1981).

When a contract is unambiguous, the court's construction is restricted to the four corners of the contract.[5] The court must also consider the entire contract "in determining the meaning of any or all of its parts." Adkins v. Bluegrass Estates, Inc., 360 S.W.3d 404, 411 (Tenn. Ct. App. 2011) (citing Aetna Cas. & Surety Co. v. Woods, 565 S.W.2d 861, 864 (Tenn. 1978)). Each provision of the contract must be construed

---

[5] See, e.g., Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002); Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006); City of Cookeville, Tn. v. Cookeville Regional Med. Ctr., 126 S.W.3d 897, 903 (Tenn. 2004); Rogers v. First Tennessee Bank National Ass'n, 738 S.W.2d 635, 637 (Tenn.Ct.App. 1987).

"in harmony with each other . . . to promote consistency and to avoid repugnancy between the various contract provisions. . . ." <u>Teter v. Republic Parking Systems, Inc.</u>, 181 S.W.3d 330, 342 (Tenn. 2005)(quoting <u>Guiliano v. Cleo, Inc.</u>, 995 S.W.2d 88, 95 (Tenn.1999)).

## III. LEGAL ANALYSIS

In the instant action, the parties differ as to whether UNC's Waiver is enforceable, and if so, to what extent. Anglefix and UNC assert five arguments. First, Anglefix and UNC assert that UNC tendered the Waiver to the Court for acceptance in lieu of joining this action. (ECF No. 183 at 4.) Second, Anglefix and UNC argue that neither Defendant nor the Court accepted the Waiver. (<u>Id.</u>) Third, Anglefix and UNC contend that UNC did not receive consideration for its Waiver. (<u>Id.</u>) Fourth, Anglefix and UNC assert that UNC properly rescinded the Waiver. (<u>Id.</u>) Fifth, Anglefix and UNC aver that UNC's license to Anglefix renders UNC unable to convey a license to Defendant for the field of use relevant to Defendant's patent infringement in this case. (<u>Id.</u> at 2-4.)

Defendant opposes each of these arguments, and asserts that it has received an irrevocable and unconditional license from UNC via UNC's Waiver. (ECF No. 186 at 3.) Defendant sets out a series of legal propositions in support of this argument:

7

(1) UNC's Waiver is the functional equivalent of a unilateral covenant not to sue; (2) the Waiver's scope renders it unconditional and irrevocable; (3) in patent law, a covenant not to sue operates as a license; and (4) UNC's Waiver provided Defendant with an unconditional and irrevocable covenant not to sue and thus a license. (See ECF Nos. 178, 186.)

The threshold issue underlying the parties' filings is whether the Waiver constitutes an offer that ripened into an enforceable and binding obligation. For the reasons stated below, the Court finds the Waiver does not.

## A. The Waiver Is Unambiguous

The parties and the Court agree that the Waiver is unambiguous. (Hr'g Tr. at 17:1-5, 23:2-5, ECF No. 190.) Defendant argues that an unambiguous reading of the Waiver would show that "[n]othing contained in the [Waiver] states that it is conditional upon acceptance" (ECF No. 186 at 3), and that the scope of the specific Waiver language is so broad that it negates any qualifying statements. (ECF No. 178 at 5.) Anglefix and UNC contend that the "[W]aiver was tendered to the Court conditional on acceptance as a substitute for joinder," and that Defendant "ignores the language of the offer of waiver. . ." (ECF No. 183 at 1-2.)

As the Waiver is unambiguous, the Court must construe the Waiver's terms by their clear and unambiguous meaning within the four corners of the document. See Sutton v. First Nat. Bank of Crossville, 620 S.W.2d 526 (Tenn. Ct. App. 1981).

The Waiver reiterates the license relationship between UNC and Anglefix, and notes that the Court's June 27 Order determined that "it is prudent to compel UNC to join the suit." (ECF No. 171-1 at 1.) It then expresses UNC's "desire[] to avoid the unnecessary cost associated with participation as a party Plaintiff. . . ." (Id. at 2.) In light of this, UNC agrees to be legally bound "to the full extent as it would be bound as if joined as a Co-Plaintiff with Anglefix." (Id. at 2.) The Waiver then goes on to state that UNC "waives the assertion of any rights it may have to assert the '677 patent-in-suit against [Defendant]. . . for the entire term of the '677 [Patent]." (Id.) The Waiver further asserts that UNC "does not grant [Defendant] any license nor any right in or to the '677 patent," and is "undertak[en]. . . for the sole purposes [sic] of complying with this Court's Order of June 27, 2016. . . to allow Anglefix to assert the patent in suit against [Defendant] as the sole Plaintiff." (Id.)

Based on the clear and unambiguous language of the Waiver, the Court determines that UNC's Waiver is intrinsically

contingent on the Waiver providing Anglefix with the
appropriate prudential standing to sue on its own.

Defendant's argument that the scope of the specific Waiver
language is so broad that it negates any of the remaining
qualifying statements is unpersuasive.  (See ECF No. 178 at 5.)
Defendant seeks to have this Court consider the language that
UNC "waives the assertion of any rights it may have to assert
the '677 patent-in-suit against [Defendant]. . . for the entire
term of the '677 [Patent]" (ECF No. 171-1 at 2), and disregard
UNC's express purpose for offering the Waiver.  (ECF No. 178 at
5.)  The Court declines to construe the language in this way.
Contract law principles require that "[t]he entire
contract . . . be considered in determining the meaning of any
or all of its parts," Adkins, 360 S.W.3d at 411, and that each
provision of the contract be construed in harmony with each
other to promote consistency,  Teter, 181 S.W.3d at 342.

Read in its entirety, UNC's Waiver offers to surrender
UNC's right to sue Defendant if the Waiver provides Anglefix
with the required prudential standing to sue on its own.

**B. The Court's Rejection of the Waiver Renders it Unenforceable**

The parties disagree as to whom the offer of waiver was
tendered: the Court or Defendant.  Defendant argues that the
Waiver "was not offered to the Court and the Court could not

10

have rejected it." (ECF No. 186 at 2.)  Anglefix and UNC

disagree, stating that UNC's "[W]aiver was tendered to the

Court. . ."  (ECF No. 183 at 1.)

The parties agree, however, that the Waiver was neither

sent to nor discussed with Defendant prior to its filing with

the Court.[6]  Rather, Defendant became aware of the Waiver when

it was filed with the Court. (See ECF No. 171-1.)  The fact

that Defendant was unaware of the Waiver is in stark contrast

with both binding and persuasive authorities.  Indeed, each of

the cases proffered by the parties include the opposite fact

pattern, where the offeror first directly sent its waiver or

covenant not to sue to the opposing party, then notified the

---

[6] Defendant alleges the Waiver was filed in response to a letter it
sent to UNC "through its counsel, stating [Defendant's] intention to assert
claims again UNC if UNC decided to join this suit as a plaintiff." (ECF No.
186 at 3 & n.4.)  At the telephonic motion hearing, however, Defendant and
Plaintiff agreed that no other communication regarding this letter occurred
between the parties.  (Hr'g Tr. at 5:7-20, ECF No. 190.) Defendant's
counsel concedes it sent this letter on June 30, 2016.  (Id. at 6:13-14.)
The Waiver, signed and dated July 15, 2016 by UNC's representative, was
filed July 25, 2015, and did not mention any letter or communication
between UNC, Anglefix, and Defendant. (ECF No. 171-1 at 2.)  Thus, the
Court rejects the argument that this loose temporal relationship between
the letter and filing of the Waiver indicates that the letter was offered
to Defendant or that it constitutes as valuable consideration under
contract law.

Court.[7]  The Motion presenting the Waiver is also entitled

"Motion to Accept Waiver in Response to Order."  (ECF No. 176.)

The facts in the instant case, therefore, support a finding

that the Waiver was offered, "[t]he act . . . of presenting

something for acceptance," to the Court and solely presented to

the Court.  OFFER, Black's Law Dictionary (10th ed. 2014).  By

its language, Anglefix and UNC sought acceptance from the Court

in lieu of UNC's joinder.  Defendant appears to concede this

point:  "AngleFix then *moved the Court to accept UNC's Waiver*

*of Claims* so that UNC could forego joining this lawsuit as a

co-plaintiff and thereby waive its sovereign immunity." (ECF

No. 178 at 1 (emphasis added).)

In the August 2, 2016 Order on Plaintiff's Motion to

Accept Waiver In Response to Order, the Court concluded that

---

[7]  See Transcore, LP v. Elec. Transaction Consultants Corp., No.
CIV.A.3:05-CV-2316-K, 2008 WL 2152027, at *1 (N.D. Tex. May 22, 2008),
aff'd, 563 F.3d 1271 (Fed. Cir. 2009) (considering covenant not to sue
contained in previous settlement agreement entered into by the parties
prior to the instant action); Afshari v. Bear Archery, Inc., No. CIV.A.
5:12-0013-DCR, 2014 WL 1883676, at *1 (E.D. Ky. May 1, 2014) (same);
Innovus Prime, LLC v. Panasonic Corp., No. C-12-00660-RMW, 2013 WL 3354390,
at *4 (N.D. Cal. July 2, 2013) (same as to an 1982 agreement between
parties); Caraco Pharm. Labs, Ltd. v. Forest Labs., Inc. et al, No. 2:07-
cv-10737-BAF-MKM, (E.D. Mich. 2007) (considering covenant not to sue that
defendants sent directly to plaintiff prior to filing it with the court),
rev'd on other grounds, Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.,
527 F.3d 1278 (Fed. Cir. 2008) (same); Auto. Prod. Corp. v. Wolverine
Bumper & Specialty Co., 15 F.2d 745, 748 (6th Cir. 1926)(considering patent
license agreement formed prior to litigation); Nilsson v. Architron Sys.,
Inc., 2011-Ohio-4987 (considering settlement documents prepared by appellee
and sent to appellants prior to submitting them with the court); In re TR
Labs. Patent Litg., No. 3:09-cv-03883 (D.N.J. July 14, 2014) (considering
offer of covenant not to sue made but not accepted between parties prior to
notifying the court).  The Court has not found any authority where a court
has received a waiver or covenant not to sue prior to its receipt by the
opposing party.

"[a] mere waiver of claims from UNC does not confer upon Plaintiff 'all substantial rights in the patent' that would enable Plaintiff to sue without joining UNC." (ECF No. 175 at 2.) The Court, therefore, "DENIE[D] Plaintiff's motion to accept UNC's waiver in place of the joinder of UNC to the instant litigation," and gave "Plaintiff a final opportunity to establish prudential standing." (Id. at 3-4.) The denial of Plaintiff's Motion to Accept Waiver in Response to Order constituted a "rejection" of UNC's offer.

The Court's rejection rendered the Waiver unenforceable for two reasons. First, the Waiver was tendered to the Court for acceptance, but was rejected. Once rejected, an offer ceased to exist and cannot be enforced. Akers v. J. B. Sedberry, Inc., 39 Tenn. App. 633, 641, 286 S.W.2d 617, 621 (1955). Second, even if not tendered to the Court for acceptance, Waiver's offer did not ripen into an enforceable obligation because it was contingent on the Court accepting the Waiver in place of UNC's joinder.

C. **Remaining Arguments**

Having found the Waiver unenforceable as a rejected offer and/or as a contingent offer whose prerequisite was unsatisfied, the Court finds it unnecessary to address the parties' remaining arguments.

## VI. CONCULSION

For the reasons stated above, the Court GRANTS the Joint Motion of Plaintiff Anglefix and Third Party Intervener The University of North Carolina to Add The University of North Carolina as Co-Plaintiff in this Matter (ECF No. 176), DENIES Defendant's Motion for Summary Judgment for Lack of Standing (ECF No. 130), and lifts the June 27, 2016 stay in the case (ECF No. 169).

**IT IS SO ORDERED**, this 15th day of November, 2016.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE