IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANGLEFIX, LLC, and THE UNIVERSITY OF NORTH CAROLINA<br><br>    Plaintiffs,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC.,<br><br>    Defendant. | No. 13-cv-2407-JPM-tmp |

**ORDER CLARIFYING CLAIM CONSTRUCTION ORDER AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PRECLUDE AS AN EXPERT AND THE REPORTS OF MATTHEW DAVIES AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY AS MOOT**

This case concerns alleged infringement of United States Patent No. 6,955,677 (the "'677 Patent"). Before the Court is Defendant Wright Medical Technology, Inc.'s Motion to Strike the Expert Reports of Matthew Davies and Preclude Him from Offering Expert Testimony in this Case, filed on May 31, 2016. (ECF No. 154.) Plaintiffs filed a response on June 27, 2016. (ECF No. 170.) Defendant filed a reply on December 5, 2016. (ECF No. 202.) Plaintiffs then moved for file a sur-reply on December 5, 2016. (ECF No. 203.) For the reasons stated below, the Court clarifies its Claim Construction Order, and GRANTS in part and DENIES in part Defendant's Motion to Strike the Expert Reports of Matthew Davies and Preclude Him from Offering Expert Testimony in this Case (ECF No. 154). The Court also DENIES as moot Plaintiffs' Motion for Leave to File Sur-Reply Brief in Opposition to the Motion to Strike the Expert Reports of Matthew Davies (ECF No. 203).

## I. ABBREVIATED PROCEDURAL BACKGROUND

Defendant Wright Medical Technology, Inc. filed a Motion to Strike the Expert Reports of Matthew Davies and Preclude Him from Offering Expert Testimony in this Case on May 31, 2016. (ECF No. 154.) Plaintiff filed a response in opposition on June 26, 2016. (ECF No. 170.) Following a Court-ordered stay, Defendant sought leave to file a reply on November 23, 2016. (ECF No. 195.) The Court granted leave on December 2, 2016. (ECF No. 201.) On December 5, 2016, Plaintiff, along with newly joined co-plaintiff the University of North Carolina, moved for leave to file a sur-reply to Defendant's reply concerning Expert Matthew Davies. (ECF No. 203.) Defendant filed a response in opposition to this request, stating that Plaintiffs failed to comport with multiple local rules, e.g., failure to consult prior to filing, and that Plaintiffs' motion failed to cite any authority. (ECF No. 205.)

The Court then scheduled an in-person motion hearing for January 26, 2017 (rescheduled later to January 31, 2017 (ECF No. 215)) to discuss pending motions before the Court. (ECF No. 212.)

## II. DISCUSSION

Defendant moves to strike Davies as an expert along with his expert reports because Davies "lacks the required qualifications and expertise to testify on the issues of infringement and validity of United States Patent No. 6,955,677 and, in forming his opinions, failed to apply the claim constructions set forth by the Court's December 30, 2015 Claim Construction Order." (ECF No. 154 at PageID 4926.) Defendant makes two primary arguments against Davies: (1) Davies does not qualify as an expert because he testified that he is not an expert on matters related to the technology at issue, and (2) Davies's expert reports disregard the Court's Claim Construction, and thus they are inadmissible.

First, Defendant asserts that Davies "testified that he is not an expert and is not qualified to opine on matters related to the technology at issue" in a previous matter where he was deposed as a fact witness. (Id. at PageID 4930 (citing AngleFix Tech, LLC v. Smith & Nephew, Inc., Case No. 13-CV-02281 (W.D. Tenn.).) Defendant also contends that in Davies's previous deposition, "Davies testified that he lacked the qualifications and expertise needed to explain how the various prototype 'concepts' on which he consulted for AngleFix differed from each other or whether they were within the scope of the invention claimed by the '677 Patent." (Id.) Defendant avers that allowing Davies to inform the jury would be an abuse of discretion by the Court under Federal Circuit precedent. (Id. at PageID 4931 (citing Sundance, Inc. v. Demonte Fabricating Ltd., 550 F.3d 1356, 1363 (Fed. Cir. 2008); Centricut, LLC v. ESAB Group, Inc., 390 F.3d 1361 (Fed. Cir. 2004), cert. denied 546 U.S. 814 (2005)).

Second, Defendant asserts that Davies improperly and "repeatedly disregarded the Court's Claim Construction Order, applying his own inconsistent claim constructions in an effort to support AngleFix's infringement and validity positions." (Id. at PageID 4930) Defendant avers that Federal Circuit precedent precludes claim construction inconsistent with the Court's claim construction order as irrelevant and inadmissible. (Id. at PageIDs 4931, 4943 (citing Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc., 589 F.3d 1179, 1183 (Fed. Cir. 2009)).) For example, Davies states that a thread "is a structure or 'feature' of a part, typically helical or a partial helix, which allows for interaction with another part in a specified mechanical way." (Id. at PageID 4943 (citing Davies Report ¶ 16) (internal quotation marks omitted).) Defendant contends that this definition starkly contrasts with the Court's definition of "non-threaded" as "'without a continuous or intermittent helical feature on the inner surface of the hole . . . .'" (Id. (citing ECF No. 93 at 22).) Defendant further asserts the Court

3

directly foreclosed a construction that included partially non-helical threads in its Claim Construction Order. (Id. (citing ECF No. 93 at 21).) Defendant also contends that Davies's determination that Defendant's accused products are "non-threaded" because the "broken helical ridges" of these products "permit both on-axis and off-axis insertion of a locking screw . . . was [also] expressly rejected by the Court in its Claim Construction Order." (Id. at PageID 4944.) Defendant argues that Davies goes on to incorrectly construe the claim terms "tappable contract region," "protrusions," and "tapping," which should also be stricken. (Id. at PageIDs 4945-48.)

Plaintiffs respond that Davies is qualified as an expert and that he properly relied on the Court's Claim Construction in his reports. (ECF No. 170 at PageIDs 6228-40.) Plaintiffs first assert that Davies served as a third-party fact witness in the case cited by Defendant, and thus his "statements that 'I am not an expert' in 2014, during his fact deposition was a confirmation of counsel's objections to questions seeking to elicit opinion testimony from" him. (Id. at PageID 6229.) In short, Plaintiffs assert that

> Davies never testified that he lacked the qualifications and expertise needed to explain how the various prototype 'concepts' on which he consulted for AngleFix differed from each other or whether they were within the scope of the invention claimed by the '677 Patent. [He] simply stated that [he] had never performed such analysis.

(Id. at PageID 6233.) In other words, Plaintiffs argue Davies was not acting as an expert in the previous matter, and his "I am not an expert" language does not preclude him from being an expert in this case.

Plaintiffs also assert that Davies's reports conform to Federal Rule of Evidence 702, arguing that the reports incorporate the Court's Claim Construction Order and are admissible.

4

(Id. at PageIDs 6234, 6240.) Plaintiffs further contend that "[a]n expert is not a person of ordinary skill in the art, he simply needs to view and evaluate the patent and the prior art from the viewpoint of one of ordinary skill in the art." (Id. at PageID 6237.) Nonetheless, Plaintiffs argue that although Davies did not have the education and experience of one of ordinary skill in the art in 2002, he had acquired this status by 2006, and precedent does not require "that an expert must have been a person of ordinary skill at the time of the invention." (Id. at PageIDs 6238-39.)

Defendant then replies that Davies should be precluded as an expert and his reports stricken for four reasons. First, Defendant argues that Plaintiffs do not address Davies's incorrect claim constructions, and thus Davies's claim constructions should be stricken. (ECF No. 202 at PageID 6904.) Second, Defendant contends that Davies must have possessed ordinary skill in the art as of invention priority date (2002), and because Plaintiffs concede Davies was not, Davies is disqualified as an expert under Federal Circuit precedent. (Id. (citing Sundance, Inc. v. Demonte Fabricating Ltd., 550 F.3d 1356, 1361, 1363 (Fed. Cir. 2008); Extreme Networks, Inc. v. Enterasys Networks, Inc., 395 Fed.Appx. 709, 715 (Fed. Cir. 2010)).) Third, Defendant asserts that Davies's sworn statements that he was not an expert disqualify him as an expert in this case because he was unfamiliar with the '677 patent and the relevant technology at the time of his 2014 deposition in the Smith & Nephew litigation. (Id. at PageID 6905-06.) Fourth, Defendant contends that Plaintiffs' "[o]pposition was filed ten days late and without leave of Court in violation of the Local Rules and the Court's Orders." (Id. at PageID 6906.) Defendant contends that this late filing cuts against the Court's previous Order, which stated that "[b]oth parties are ORDERED to adhere strictly to all future deadlines. Any extensions of time or other relief must be requested before the

relevant deadline." (ECF No. 115.) The Court addresses each of the Defendant's arguments in turn.

### A. Davies's Qualifications and Previous Testimony as a Fact Witness

Defendant contends that Davies is disqualified as an expert because he did not possess ordinary skill in the art as of the invention priority date (2002) (ECF No. 202 at PageID 6904), and because he made previous sworn statements that he was not an expert (id. at PageIDs 6905-06).

Defendant relies on the Federal Circuit's rulings in Sundance, Inc. v. Demonte Fabricating Ltd., 550 F.3d 1356, at 1361, 1363 (Fed. Cir. 2008) and Extreme Networks, Inc. v. Enterasys Networks, Inc., 395 Fed. Appx. 709, 715 (Fed. Cir. 2010) for the proposition that an expert must have acquired the education and experience of one of ordinary skill in the art prior to the invention's priority date. The result of this reasoning is that an individual who achieves the requisite qualifications is precluded as an expert if he/she acquired those qualifications after the patent's priority date. This argument has no basis in law. In Sundance, the Federal Circuit found that a patent attorney, who had practiced as an engineer for a year and half in areas unrelated to the patent-at-issue's covered field and had never acquired other technical experience in the field of the invention, was not qualified as a technical expert. 550 F.3d at 1361. Similarly in Extreme Networks, the Federal Circuit found that the purported expert never acquired the qualifications necessary to be deemed one of ordinary skill in the art. 395 F. App'x at 715. The central issue in both these cases was whether the alleged expert had the acquired the required qualifications, e.g. education and

experience, to opine on technical issues, irrespective of when he or she acquired those qualifications.

In fact, courts have found that an "expert must be qualified to testify about what a person with ordinary skill in the art must have understood at the time of the invention, but the expert's knowledge of that may have come later." Disney Enterprises, Inc. v. Kappos, 923 F. Supp. 2d 788, 799 (E.D. Va. 2013) (internal quotation marks omitted) (quoting Baldwin Graphic Sys., Inc. v. Siebert, Inc., 2006 WL 3718074, at *1 (N.D. Ill. Dec. 14, 2006)).

As a practical matter, it presents an unnecessary hurdle to require an expert—who can testify to what a person with ordinary skill in the art would have understood at the time of the invention—acquire his or her qualifications prior to the invention's priority date. For example, if a particular scientific community is especially small at the time of invention, but grows several years later, it would be burdensome to mandate that the parties only provide experts from the original, small scientific community, when another expert is similarly qualified and more accessible.

Defendant also seeks to have Davies's reports and testimony stricken because in a separate cause of action—while acting as a fact witness—Davies testified that he "lacked the qualifications to state whether the 'concepts,' on which he worked for AngleFix, practiced the invention claimed by the '677 Patent." (ECF No. 154-1 at PageID 4938 (referring to deposition testimony taken in AngleFix Tech, LLC v. Smith & Nephew, Inc., Case No. 13-CV-02281 (W.D. Tenn.).) Plaintiffs contend that

> Dr. Davies testified as a fact witness [in the previous matter] about work he had performed in 2007 - 2009, as a mechanical engineering contractor for AngleFix. Dr. Davies machined holes into metal plates that were used by AngleFix as demonstration prototypes of an AngleFix embodiment of the '677

7

patent. Dr. Davies testified that he had not formed any opinion about the scope of the claims nor about the relationship, if any, of the holes he machined to the claims of the '677 patent. Dr. Dahaner's testified that he had been hired to copy the work performed by a previous mechanical engineer and make manufacturing suggestions. Dr. Davies had not been hired to compare prototypes to the claimed invention.

(ECF No. 170 at PageID 6232.) In short, Plaintiffs argue "Dr. Davies has never testified that he is not qualified to be an expert, only that he was testifying as a fact witness, not as an expert." (Id. at PageID 6233.)

The Court finds that despite a clear misunderstanding by Plaintiff's counsel as to what lay opinion is admissible, Davies's prior sworn testimony does not disqualify him as an expert in this matter. Plaintiff's counsel clearly instructed Davies's in the previous matter to refrain from giving any opinion testimony:

> MR. ZITO: And also, if you ask him to opine, you've asked him for opinion testimony. And as his attorney here, he's here as a fact witness, not an opinion witness. So I would urge him not to opine on anything.
>
> MR. ANGER: I'm just asking him to provide his opinion on documents that he's written.
>
> MR. ZITO: That's asking for opinions, not facts, even if he wrote the document. Are you asking him what he recollects, that's recollection, not his opinion as to what he wrote. That's an opinion testimony, not a fact testimony.
> . . . .

(ECF No. 154-4 at PageID 5063:10-21.)

The Court notes that Plaintiff's counsel may have overstated the limit on fact witnesses to proffer opinion testimony. Federal Rule of Evidence 701, entitled "Opinion Testimony by Lay Witnesses," provides:

> If the witness is not testifying as an expert, testimony in the form of opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to a clearly understanding the witness' testimony or to determine a fact

8

>  in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Courts have held that lay opinion testimony based on a review of written documents is admissible. Innovation Ventures, LLC v. NVE, Inc., No. 08-11867, 2016 WL 266396, at *10 (E.D. Mich. Jan. 21, 2016); Paulson v. Jefferies & Co., No. CV 98-2644 FMC(AIJX), 2002 WL 34453504, at *6 (C.D. Cal. Mar. 20, 2002) (citing United States v. Leo, 941 F.2d 181, 193 (3rd Cir. 1991)); Duluth Lighthouse for the Blind v. C.G. Bretting Mfg. Co., 199 F.R.D. 320, 326 (D. Minn. 2000); United States v. Grote, 632 F.2d 387, 389 (5th Cir. 1980).

Nevertheless, the Court does not find that Davies's previously sworn testimony disqualifies him as an expert in this case. Davies's testimony does not suggest he does not know or could not know the material being asked, but simply that he sought to avoid providing any and all opinion—per his counsel's request. For example, when asked "Have you heard the term frictional welding?" Davies replied, "Have I heard the term frictional welding, yes." (ECF No. 170-1 at PageID 6263:4-7.) Davies succinctly answers a purely factual and recollection-based question. When then asked "And what does that mean?" however, Davies avoids the opportunity to opine by stating, "I'm not an expert. I actually would hesitate to try to define it." Davies testimony is littered with such answers to questions that would require any opinion, even if permissible under Rule 701. These aversions to opinion-related answers, however, do not persuade the Court that Davies does not qualify as an expert in this matter.

The Court, therefore, declines to strike Davies's testimony or reports based on the sworn statements he made as a fact witness in AngleFix Tech, LLC v. Smith & Nephew, Inc., Case No. 13-CV-02281 (W.D. Tenn.).

B.   **Claim Construction Order Clarification**

In its Claim Construction Order, the Court noted that the "PTAB determined that . . . [non-threaded] excludes both a continuous thread in the form of a helical ridge and a partial thread that functions as a thread." (ECF No. 93 at PageID 2543.) The Court also found that "Defendant's assertion that threads are 'universally accepted' to be helical in structure is supported by extrinsic evidence." (Id. at PageID 2544.) "Accordingly, the Court modifie[d] AngleFix's construction of 'non-threaded' and add[ed] 'intermittent' and 'helical' so as to exclude apertures whose inner surfaces contain helical segments functioning as threads." (Id. at PageID 2545.) The Court then construed "non-threaded" as: "without a continuous or intermittent helical feature on the inner surface of the hole which has a fixed engagement configuration with a helical feature on the surface of a screw." (Id.)

In his report, Davies defined a thread as "a structure or 'feature' of a part, typically helical or a partial helix, which allows for interaction with another part in a specified mechanical way. The threaded structure defines a single pre-defined interaction between the parts. If the structure is not present in the part, it is non-threaded." (ECF No. 154-2 ¶ 16.) Defendant takes issue with Davies's use of the word "typical," rather than "necessary." (ECF No. 154 at PageID 4943.) Defendant also takes issue with Davies's reasoning that a "threaded structure defines a single pre-defined interaction between the parts" and a screw that can be inserted at multiple angles qualifies as non-threaded. (Id.; see ECF No. 154-2 ¶ 41 ("My

10

examination shows that in all cases, the screws can be inserted at multiple angles and therefore no fixed engagement configuration exists and therefore using the Court's interpretation the hole is non-threaded.").) Defendant asserts that the Court rejected this argument in its Claim Construction Order, stating that a construction requiring "an aperture that allows for multiple angles of engagement with a screw must be non-threaded even if the aperture's surface contains helical segments otherwise functioning as a thread . . . is inconsistent with the plain and ordinary meaning, the patent specification, the patent owner's assertion before PTAB, the construction PTAB itself adopted, and dictionary definitions." (ECF No. 93 at PageID 2545).)

At the motion hearing, Plaintiffs and Defendant conceded that a plate cannot be both threaded and non-threaded, **it can only be one or the other**. (Hr'g Tr., ECF No. 224 PageID 7227:5-11.) The central question, therefore, was whether an aperture that has internal, helical segments that function as a thread when a screw is inserted at a perpendicular angle, but also allows for multiple angles of engagement with a screw, renders the aperture threaded or non-threaded. Plaintiffs argued that "'Threaded' means one and only one orientation" for the screw to interact with the plate, an interpretation Plaintiff claims is supported by the PTAB and patent specification. (Id. at PageID 7241:13-23.) Defendant disagreed and contended that "the Court's construction of 'non-threaded' includes a structural component and a functional component. The structural [component] is a continuous intermittent helical feature on the inner surface of the hole. The functional [component] is a fixed-engagement configuration with a helical feature on the surface of the screw." (Id. at PageIDs 7187:22-24, 7188:1-4.) Defendant therefore argued that so long as a product embodies both these structural and functional components, it is threaded. (Id. at PageIDs 7188-89.) The Court

11

agrees with Defendant, and finds that Plaintiff's interpretation improperly conflates the concepts of threaded and non-tappable.

Plaintiff improperly conflates "non-threaded/threaded" and "tappable."  The Court's Order Following Claim Construction Hearing construed "'tappable contact region' as: 'untapped region of material structured to enable a threaded fastener to tap the region at a desired, non-predetermined angle.'"  (ECF No. 93 at PageID 2551.)  The Court further construed "'tap,' 'tapped,' or 'tapping' as: 'create a custom internal thread in a material in response to forceful insertion and rotation of a head section.'"  The Court also construed "threading" as "'forming or engaging a thread.'"  (Id. at PageID 2559.)  The Court found that when "the 'feature on the inner surface of the hole . . . has a fixed engagement configuration with a feature on the surface of the screw' [it] suggests that the features function as threads."  (Id. at PageID 2544.)  Under its construction, the Court finds a plate may be threaded and tappable, non-threaded and tappable, threaded and non-tappable, or non-threaded and non-tappable.  For example, a threaded, non-tappable product would include a metal nut used with a metal bolt.  The nut is threaded because it contains an internal helix that functions as a thread with the bolt.  The nut is not tappable because it is a rigid and hard, preventing the bolt from being inserted at a "non-predetermined angle."  Conversely, if the nut is made of a more malleable material, like foam, it is threaded and tappable.  Although the bolt may engage with the helical structure inside the foam nut, the bolt may also enter at a non-predetermined angle, disregarding the pre-set thread and creating a new thread within the nut.[1]  An exemplary non-

---

[1] Davies's acknowledges the difference between a threaded, non-tappable hole and a threaded, tappable hole in his report concerning validity, wherein reference to United States Patent No. 6,730,091 Pfefferle et al. Davies states
> Pfefferle clearly discloses in all of the Figures showing holes, contours or ridges that allow for loose interaction and are not tapped by the screw threads.  In fact, the threads are referred to as 'blocking' threads not 'tapping' threads, because the extent of the wiggle of the screw is

threaded, non-tappable product is a wooden peg inserted into a well-fitted wooden hole—such as in the game of Cribbage. The hole is smooth, lacking internal helical or partial helical structures, so it is non-threaded. The hole is also non-tappable, because even with force, the wooden peg cannot be inserted at a non-predetermined angle. But if the hole, or Cribbage board, was made of clay, it would be tappable, allowing the peg to be inserted at a non-predetermined angle.

Plaintiff's interpretation would require that all threaded products have a non-tappable contact region, so that only one insertion angle is possible. Accordingly, only non-threaded products may have a tappable contact region. This interpretation is not supported by the Court's claim construction, patent specification, PTAB determinations, or prosecution history. In fact, Davies recognizes this distinction: "[t]he '677 patent does not require that the 'tappable contact region' be 'non-threaded' in every claim. . . . Wright Medical devices not only contain 'tappable contact regions' but the regions are also 'non-threaded tappable contact regions, as well." (ECF No. 222-1 at PageID 7081.) Davies also recognizes that whether a hole is threaded cannot be dependent on its tappability:

> Nasser's asserts that the screw itself is preferably made of a harder material so that it can cut into and destroy the threads in the holes as it advances. Nasser then makes the leap that the threads in the hole do not have a fixed engagement with a screw because it can be destroyed by crossthreading. This is not a reasonable interpretation of the Court's Construction of "nonthreaded" because every hole in every plate would be "non-threaded" because any thread can be forcibly destroyed.

(ECF No. 222-2 at PageID 7125.)

---

blocked by the threads pushing up against the contours of the hole which also blocks the screw from passing through the hole.
(ECF No. 222-2 at PageID 7098.)

Accordingly, Plaintiff's narrow interpretation would render the "tappable contact region" limitation in the disputed phrase "non-threaded tappable contact region" ('677 Patent, col. 10, ll. 40-41, ECF No. 23-1) meaningless. Cablestrand Corp. v. Wallshein, 29 F.3d 644 (Fed. Cir. 1994). The Court, therefore, rejects Plaintiff's argument that "threaded" means the screw may only interact with the aperture in a single orientation.

B.  Davies's Testimony and Report in this Action

The Court finds that Davies's opinions concerning the definition of "non-threaded" are inconsistent with and/or misconstrue the Court's claim construction rulings, and thus must be stricken under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

> Federal Rule of Evidence 702 provides that
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. District courts exercise a gatekeeping function under Rule 702, ensuring that a witness' expertise is both relevant and reliable. United States v. Rios, 830 F.3d 403, 412 (6th Cir. 2016) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) & Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)).

According to the Sixth Circuit, "[t]he Rule 702 analysis proceeds in three stages:"

> First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable.

Rios, 830 F.3d at 412 (internal quotation marks removed) (quoting In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008), *cert. denied*, 556 U.S. 1152 (2009)).

As to qualifications—the first stage—"[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994).

The relevancy of expert testimony—the second stage—hinges on whether the subject matter presented is "beyond the ken of the average juror." *Rios*, 830 F.3d at 412 (quoting United States v. Amuso, 21 F.3d 1251, 1263 (2d Cir.), cert. denied, 513 U.S. 932 (1994)). In short, expert testimony is not relevant, if the jurors are likely to understand the presented material without expert testimony. Id. (citing United States v. Thomas, 74 F.3d 676, 682 (6th Cir.), cert. denied, 517 U.S. 1162 (1996), abrogated on other grounds by Morales v. Am. Honda Motor Co., 151 F.3d 500, 515 (6th Cir. 1998)).

As to the third stage—reliability—

> Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.' In addition, Daubert provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony. These factors include: 'testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community.'

In re Scrap Metal Antitrust Litig., 527 F.3d at 529 (citations omitted) (quoting Fed. R. Evid. 702 & United States v. Langan, 263 F.3d 613, 621 (6th Cir. 2001)).

Although "[t]he party offering the expert's testimony has the obligation to prove the expert's qualifications by a preponderance of the evidence," Burgett v. Troy-Bilt LLC, 579 F. App'x 372, 376 (6th Cir. 2014), "rejection of expert testimony is the exception, rather than the rule," In re Scrap Metal Antitrust Litig., 527 F.3d at 530 (internal quotation marks omitted).

In the instant case, the Court finds that Davies's opinions do not satisfy the relevance requirements of Daubert to the extent that they are inconsistent with and/or misconstrue the Court's claim construction rulings, and thus those opinions must be stricken. The Federal Circuit held in Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209 (Fed. Cir. 2006), that a district court did not abuse its discretion when it "excluded the expert opinion evidence as irrelevant because it was based on an impermissible claim construction. . . ." Id. at 1224 n.2. The patent specification in the Liquid Dynamics case contained the term "substantial helical flow," which the district court construed as meaning "all flow patterns that are generally, though not necessarily perfectly, spiral, and that fill much, though not necessarily all, of the tank's volume." Id. at 1214. The excluded expert opinion had relied heavily on a Figure that showed "perfect helical flow instead of substantial helical flow." Id. at 1224 n.2. Thus, the expert witness's excluded testimony contradicted not only the court's claim construction, but also the plain language of the claim itself. The Federal Circuit upheld the district court's decision that such testimony "could prejudice and confuse the jury." Id.

The Federal Circuit expressed similar concerns over jury confusion in CytoLogix Corp. v. Ventana Medical Systems, Inc., 424 F.3d 1168 (Fed. Cir. 2005). There, no claim

16

construction hearing had been held, and the patent claims were not construed until the close of evidence at trial. Id. at 1172. Even so, "by agreement the parties also presented expert witnesses who testified before the jury regarding claim construction, and counsel argued conflicting claim constructions to the jury." Id. The Federal Circuit called those actions "improper," and admonished the district court for allowing the testimony because "[t]he risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that [it is] the district court's claim constructions [which] control [the jurors' deliberations]." Id.

Applying those principles, district courts in subsequent cases have consistently excluded expert testimony as irrelevant under the Daubert standards when that testimony contradicted the court's claim construction rulings. See, e.g., LP Matthews LLC v. Bath & Body Works, Inc., 458 F. Supp. 2d 198, 210 (D. Del. 2006) (excluding expert testimony in expert reports that was inconsistent with court's claim construction); Callpot, Inc. v. GN Netcom, Inc., 703 F. Supp. 2d 815, 821-22 (N.D. Ill. 2010) (rejecting as irrelevant the testimony of an expert witness as to "precisely the construction of [a claim term] that the Court considered, and rejected, in its claim construction"); Marctec, LLC v. Johnson & Johnson, No. 07-cv-825-DRH, 2010 WL 680490, at *4 (S.D. Ill. Feb. 23, 2010) ("This Court excluded expert testimony premised on this mischaracterization of the claim construction as inadmissible under Daubert . . . and Fed. R. Evid. ("FRE") 702 because it 'd[id] not address the requirements of the Court's claim construction and is irrelevant to the question of infringement.'") (quoting Marctec, LLC v. Johnson & Johnson, 638 F. Supp. 2d 987, 1006 (S.D. Ill. 2009)). In short, "an expert should not be permitted to offer testimony on infringement or validity that does not follow the court's claim construction ruling." Everlight

17

Elecs. Co. v. Nichia Corp., No. 12-CV-11758, 2014 WL 4707053, at *7 (E.D. Mich. Sept. 22, 2014).[2]

Such decisions are consistent with the federal courts' general disfavor for a party's attempts to alter a claim construction ruling through later testimony. See, e.g., Gemtron Corp. v. Saint-Gobain Corp., No. 1:04-0387, 2008 WL 1808803, at *2 (W.D. Mich. Apr. 21, 2008) (rejecting an argument in favor of a re-trial because that argument merely "recycles . . . rejected claim construction arguments"); Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems, No. 98-cv-01072-RPM, 2008 WL 410413, at *6 (D. Colo. Feb. 12, 2008) ("The opinions of Medtronic's experts were crafted to fit the infringement theories put forward by Medtronic's counsel, and those theories were legally and factually untenable in light of the court's claim construction. Medtronic pursued a strategy of giving superficial recognition to the court's claim construction rulings, while pressing its own interpretations of the claims."); Ciena Corp. v. Corvis Corp., 334 F. Supp. 2d 598, 608-09 (D. Del. 2004) (rejecting a party's attempts to distinguish its accused product because that party merely "reargue[d] claim construction issues which were already rejected by the Court").

Accordingly, Plaintiffs are not permitted to reargue claim construction issues by presenting any evidence, including expert-witness opinion-testimony or reports, that contradict the Court's construction of disputed claims. The analysis then turns on distinguishing between expert opinion that actually contradicts the court's claim construction

---

[2] District courts also find that an expert report inconsistent with the court's claim construction ruling does not generate an issue of fact that precludes summary judgment. ICU Med., Inc. v. Alaris Med. Sys., Inc., No. SA CV 04-00689 MRP, 2007 WL 8081360, at *12 (C.D. Cal. Jan. 22, 2007) (rejecting argument "that a genuine issue of material fact exists because [a party's] expert disagrees with the claim constructions or provides an analysis that is based on an inconsistent understanding of the claim construction text or reasoning."), aff'd, 558 F.3d 1368 (Fed. Cir. 2009).

decisions, and expert opinion that does not. The Court assesses each of Davies's opinions regarding non-threaded.

As to "non-threaded," Davies opines in his infringement report that Defendant's "screws can be inserted at multiple angles and therefore no fixed engaged configuration exists and therefore using the Court's interpretation the hole is non-threaded." (ECF No. 222-1 at PageID 7078.) Davies further opines that "[b]ecause the screws do not engage the broken helical ridge in the holes at a fixed angle, the holes are non-threaded." (ECF No. 222-1 at PageID 7078-79.) These opinions are inconsistent with the Court's claim construction. As stated above, a hole is threaded if it contains a continuous or intermittent helical feature on the inner surface that facilitates a fixed engagement configuration with a helical feature on the surface of the screw. In other words, if in one orientation or angle the helical features inside the hole thread mate with the helical features on the screw's surface, the hole is threaded. Whether the screw can engage with the hole at other orientations or angles goes to whether the hole is tappable, allowing the threaded head of the screw to engage the hole at a non-predetermined angle.

The Court, therefore, finds these opinions—pertaining to the definition and meaning of threaded and non-threaded—by Davies are inadmissible and irrelevant. The Court, therefore, GRANTS Defendant's Motion to Strike the Expert Reports of Matthew Davies and Preclude Him from Offering Expert Testimony in this Case (ECF No. 154) in part, as to the reports and testimony that are inconsistent with Court's claim construction ruling concerning threaded and non-threaded.

## IV. CONCLUSION

For the reasons stated above, the Court clarifies its Claim Construction Order, and GRANTS in part and DENIES in part Defendant's Motion to Strike the Expert Reports of Matthew Davies and Preclude Him from Offering Expert Testimony in this Case (ECF No. 154). The Court also DENIES as moot Plaintiffs' Motion for Leave to File Sur-Reply Brief in Opposition to the Motion to Strike the Expert Reports of Matthew Davies (ECF No. 203).

**IT IS SO ORDERED**, this 12th day of July, 2017.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE